UNITED STATES *v.* MICHIGAN CENT. R. Co.

*(Circuit Court, N. D. New York.* December 10, 1891.)

IMMIGRATION—ALIEN CONTRACT LABOR LAW.

A railroad company which knowingly employs at its office in New York, near the Canadian border, a person who resides in Canada, and comes daily to his work in the United States, is not engaged in assisting or encouraging the "importation or migration" of an alien, within the meaning of the alien contract labor law. Act Cong. Feb. 26, 1885, § 3.

At Law. Action to recover the penalty for a violation of the alien contract labor law. Judgment for defendant.

*John E. Smith,* for the United States.

*Daniel H. McMillan,* for defendant.

WALLACE, J. This is an action to recover the penalty imposed by section 3 of the act of congress of February 26, 1885, entitled "An act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States, its territories, and the District of Columbia." Briefly stated, the facts are these: The defendant, a Michigan corporation, operates a railway between Chicago and Buffalo, the route of which, between the states of Michigan and New York, is through Canada. It has an office at Suspension Bridge, in New York. One Blount applied at that office for employment as a clerk, and was engaged by the defendant at wages of $50 per month, but for no stated period. He continued in the employ of the defendant for several months. Before the expiration of the first month the officers of the defendant ascertained that Blount was an alien, residing in Canada, and having a family there, and that he came from his home each morning to the office of the defendant, and after performing his day's work returned home each night. Nevertheless defendant retained him in its service.

The defendant's liability under the act of congress is precisely the same as though it had made a new contract with Blount at the beginning of his second month of service, with full knowledge of the facts. At the end of the first month the existing contract between them was at an end, and thereafter there was an implied contract of the same tenor. The statute, by section 1, makes it unlawful for any person or corporation to prepay the transportation, or in any way assist or encourage the importation or migration, of any foreigner into the United States under contract or agreement, express or implied, made previous to the importation or migration of such foreigner; and, by section 3, declares that for every violation of the provisions of section 1, the person or corporation violating the same, by knowingly encouraging the migration or importation of an alien to perform labor or service of any kind under contract or agreement, expressed or implied, made with the alien previous to his becoming a resident or citizen of the United States, shall forfeit and pay for such offense the sum of $1,000. Notwithstanding the defendant

knowingly encouraged a foreigner to come into this country and perform services here under an implied contract previously made with him, it is not liable for the penalty unless it has encouraged the "importation or migration" of the foreigner. The statute, being penal, must be strictly construed, and cannot be extended to a case which is not manifestly within its meaning. Some light upon the meaning of the terms "importation or migration" is derived by reading other sections of the act. One of these imposes a penalty upon the master of a vessel in which the assisted foreigner has been brought here; another prohibits collectors of ports from permitting such foreigners to land; and another authorizes the secretary of the treasury, "in case he shall be satisfied that an emigrant has been allowed to land" contrary to law, to cause such emigrant to be returned at the expense of the importing vessel, or, if he entered from an adjoining country, at the expense of the person previously contracting for his services.

The several provisions of the act are directed against assisted immigrants, as well as those who prepay their transportation or encourage their migration or importation by previous contract. Blount was not an immigrant, because he did not come here intending to acquire a permanent or a temporary home. As he did not migrate here, the defendant did not encourage his "migration." He was not imported, nor did the defendant assist in his "importation," any more than he was exported, and assisted in his exportation, when he went home at night. It may be that such a case as this is within the mischief which the promoters of the law intended to remedy, but it is not within the ordinary import of the words of the statute. If every person who comes into this country migrates or is imported, within the meaning of the statute, because he remains temporarily and works here, the statute will reach many cases in which its application would be a manifest absurdity. If the construction of the act contended for by the government is correct, every alien sailor who is engaged in a foreign port for a round voyage, and comes here on the ship, and performs his duty while she is within one of our seaports, migrates here or is imported here; and the vessel owner who engages him assists in his "importation or migration," and is liable for the penalty imposed. There are other railroad corporations besides the defendant whose railways are operated both in Canada and in this country. If one of them, like the Grand Trunk for instance, having its domicile and main line in Canada, has branches or a terminus here, and a conductor or brakeman who is a Canadian brings in one of its cars, it would be liable, according to the contention for the government, to the penalty of the act, if it engaged the conductor or brakeman in Canada. This does not seem to be a reasonable interpretation.

Judgment is ordered for the defendant.